UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------

WILLIAM LEE GILLESPIE,

                              Plaintiff,

-v-

HEARTLAND SCENIC STUDIO, INC.,

                              Defendant.

------------------------------------------------------------

HEARTLAND SCENIC STUDIO, INC.,

                              Third-Party Plaintiff,            19 Civ. 8807 (PAE)

-v-                                                      OPINION & ORDER

NEW PROJECT, LLC,

                              Third-Party Defendant.

------------------------------------------------------------

PAUL A. ENGELMAYER, District Judge:

      This case, in which discovery is now complete, involves a personal injury claim by a worker at the American Museum of Natural History ("the Museum") in Manhattan. Plaintiff William Lee Gillespie ("Gillespie") claims that defendant Heartland Scenic Studios, Inc. negligently installed the Museum's "Our Senses" exhibit and created a dangerous condition by mounting strongbacks, or braces, on to the drywall rather than the permanent wall. Gillespie claims that, as a result, during deinstallation, part of the exhibit collapsed and fell on him. Pending now is Heartland's motion for summary judgment. Heartland argues that it did not have a duty to install strongbacks into the permanent wall and that its mounting of strongbacks into the drywall did not create a dangerous condition. Rather, it argues, the accident was caused by

the manner in which the exhibit was deinstalled, a process in which Heartland did not participate. Because the Court finds material disputes of fact on these points—whether Heartland was negligent in the manner by which it put up the exhibit, and whether this contributed to the accident that injured Gillespie—it denies Heartland's motion for summary judgment.

**I.     Background**

    **A.     Factual Background**[1]

On July 13, 2015, the Museum contracted with Heartland to install the "Our Senses" exhibit ("the exhibit"). Joint 56.1 ¶¶ 3–4. In accordance with the contract, Heartland fabricated

---

[1] The Court draws its account of the facts from the parties' submissions on summary judgment, including their joint Rule 56.1 statement, Dkt. 64 ("Joint 56.1"). The Court has also considered the declaration of Gail L. Ritzert, in support of defendants' motion, Dkt. 68 ("Ritzert Decl."), and attached exhibits; and the affirmation of Thomas J. Miller in opposition, Dkt. 66 ("Miller Decl."), and attached exhibits.

Heartland has filed a purported Local Defense Rule 56.1 statement, Dkt. 59, Ex. 1, containing 227 numbered paragraphs setting out facts Heartland contends are not in dispute. *See* S.D.N.Y. Local Civil Rule 56.1. All 227 paragraphs, however, fail to include a citation to a specific part of the record supplying admissible evidence supporting the proposition at issue. Gillespie asks the Court to disregard Heartland's 56.1 statement for failure to comply with Federal Rule of Civil Procedure 56(c), and the local rules implementing it. Dkt. 66, Ex. 1. The Court agrees that, given Heartland's noncompliance, its Rule 56.1 statement must be disregarded. *See* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . . ."); Local Civil Rule 56.1(d) ("Each statement by the movant or opponent pursuant to Rule 56.1(a) and (b), including each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."); *see also Squares v. Cityscape Tours, Inc.*, 603 F. App'x 16, 17 (2d Cir. 2015) ("Local Rule 56.1 . . . requires that each numbered paragraph be supported by citation to evidence" in the record. Local Rule 56.1(a), (d). It further puts litigants on notice that failure to submit such a statement may constitute grounds for denial of the motion." (cleaned up)); *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003) ("[D]efendant's Rule 56.1 statement['s] . . . unsupported assertions must nonetheless be disregarded and the record independently reviewed[.]").

270 wall components. *Id.* ¶ 7. Before Heartland installed the exhibit, Museum personnel reviewed and approved the components and a sample wall configuration of them. *Id.* ¶¶ 10–11. The Museum's Director of Exhibition, Michael Meister ("Meister"), reviewed Heartland's samples and "was involved in the fabrication and installation of" the exhibit. *Id.* ¶¶ 12–13.

In fall 2017, Heartland's employees installed the exhibit at the Museum. *Id.* ¶ 7. The exhibit, which consisted of a series of rooms that showed how human senses worked, opened in December 2017. *Id.* ¶ 6. It closed in December 2018. *Id.*

The Museum retained New Project, LLC ("New Project") to de-install the exhibit "alongside employees of [the Museum]," including Gillespie. *Id.* ¶ 19. At the time of the de-installation, Gillespie was a part-time Museum employee "who designed the crates New Project fabricated and used to store the components of the" exhibit. *Id.* ¶ 18.

On January 23, 2019, Gillespie was working on the floor of the Exhibit. *Id.* ¶ 21. Other New Project workers were taking down the exhibit's temporary walls. The de-installation crew was removing a "header over [a] doorway" when Gillespie walked over. *Id.* ¶¶ 21–23. As he reached the area where the de-installation crew was working, a section of the wall fell down, striking him. *Id.*; Ritzert Decl., Ex. M ("Surveillance Video"). Gillespie alleges that he suffered personal injuries as a result.

### B.     Procedural Background

On September 23, 2019, Gillespie filed the initial Complaint. Dkt. 1 ("Compl."). It brought claims for common law negligence and violations of Labor Law §§ 200, 240(1), 241(6). On December 13, 2019, Heartland filed an answer, Dkt. 7, and on December 27, 2019, a third-party Complaint against New Project, Dkt. 10. On February 11, 2020, New Project filed an answer to the third-party Complaint and counterclaims against Heartland. Dkt. 15.

On March 3, 2020, the Court held an initial conference, and, on March 5, 2020, approved a case management plan. Dkt. 18. On August 3, 2020 and December 7, 2020, the Court held conferences, Dkts. 24, 39, and modified the case management plan, with a final such plan issued on December 9, 2020. Dkt. 41.

On April 21, 2021, the parties stipulated to the dismissal of the third-party complaint against New Project. Dkt. 52. The parties also resolved the Labor Law claims, leaving standing only Gillespie's common law negligence claim against Heartland, which, as noted, alleges that Heartland negligently installed the exhibit by improperly installing strongbacks into the drywall rather than the permanent wall, creating a dangerous condition during the exhibit's disassembly. *See* Compl. ¶ 9; Opp'n at 5. At a conference the same day, the Court set a briefing schedule for Heartland's anticipated motion summary judgment. Dkt. 53.

On June 3, 2021, Heartland filed its motion, Dkt. 59, a joint statement of undisputed facts, and supporting declarations and exhibits.[2] On June 22, 2021, Gillespie filed an opposition to Heartland's motion, Dkt. 66, Ex. 6 ("Opp'n"), and, on June 28, 2021, the affirmation of Thomas J. Miller, Dkt. 66 ("Miller Decl."). On July 6, 2021, Heartland filed a reply. Dkt. 70 ("Reply").

## II. Legal Standards Governing Motions for Summary Judgment

To prevail on a motion for summary judgment, the movant must "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The

---

[2] Because of electronic filing difficulties, the motion was not properly docketed until June 25, 2021. Dkt. 67. Heartland's memorandum of law, Dkt. 69 ("Def. Mem."), and the declaration of Gail Ritzert, Esq., Dkt. 68, with supporting exhibits, were docketed on June 28, 2021.

movant bears the burden of proving the absence of a question of material fact. In making this determination, the Court must view all facts "in the light most favorable" to the non-moving party. *Holcomb v. Iona Coll.*, 521 F.3d 130, 132 (2d Cir. 2008).

If the movant meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008). "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted). Rather, to survive a summary judgment motion, the opposing party must establish a genuine issue of fact by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009).

"Only disputes over facts that might affect the outcome of the suit under the governing law" will preclude a grant of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether there are genuine issues of material fact, a court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)).

**III. Discussion**

In moving for summary judgment, Heartland argues that what caused the accident that injured Gillespie was not the manner in which the exhibit was installed, but the manner in which it was dismantled, in which Heartland did not participate. Heartland states this is so because it constructed the exhibit in accordance with the plans the Museum furnished it and because it had, assertedly, no duty to install strongbacks to the permanent wall. And, Heartland argues, if

5

strongbacks had been necessary to safely deinstall the exhibit, the duty was New Project's, during the deinstallation process, to mount the strongbacks. Because it was not involved in the exhibit's disassembly, Heartland argues, it is not liable for the accident. Def. Mem. at 3.

Although these arguments are available to Heartland at trial, the Court finds material disputes of fact both as to the elements of duty (whether Heartland had a duty to install strongbacks to the permanent wall, and not instead into the drywall, during installation) and causation (whether Heartland's failure to install strongbacks into the permanent wall, and instead into the drywall, created a dangerous condition). These preclude granting summary judgment for Heartland.

### A. Governing Common Law Framework

To prevail on a claim of common law negligence, the plaintiff "must demonstrate (1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 286 (2d Cir. 2006) (quoting *Solomon ex rel. Solomon v. City of New York,* 66 N.Y.2d 1026, 1027 (1985)).

"Because a finding of negligence must be based on the breach of a duty, a threshold question in tort cases is whether the alleged tortfeasor owed a duty of care to the injured party." *Espinal v. Melville Snow Contractors, Inc.*, 98 N.Y.2d 136, 138 (2002). "[A] contractual obligation, standing alone, will generally not give rise to tort liability in favor of a third party." *Id.* at 139. As a result, a contractor who was hired to perform work at a property is not liable to a third-party who is injured on the property. New York has, however, recognized "three situations in which a party who enters into a contract to render services may be said to have assumed a duty of care—and thus be potentially liable in tort—to third persons":

> (1) where the contracting party, in failing to exercise reasonable care in the performance of his duties, launches a force or instrument of harm; (2) where the

> plaintiff detrimentally relies on the continued performance of the contracting party's duties and (3) where the contracting party has entirely displaced the other party's duty to maintain the premises safely.

*Id.* at 140 (cleaned up).

Gillespie invokes the first *Espinal* exception here: for situations where the contractor, "while engaged affirmatively in discharging a contractual obligation, creates an unreasonable risk of harm to others, or increases that risk." *Church ex rel. Smith v. Callanan Indus., Inc.*, 99 N.Y.2d 104, 111 (2002). Under this theory of liability, to show that the defendant had the requisite duty, the "plaintiff must make 'some showing that the contractor left the premises in a more dangerous condition than he or she found [it].'" *Klein v. City & Cty. Paving Corp.*, No. 16 Civ. 2264 (NRB), 2018 WL 4265885, at *6 (S.D.N.Y. Sept. 5, 2018) (quoting *Foster v. Herbert Slepoy Corp.*, 905 N.Y.S.2d 226 (2d Dep't 2010)). The parties agree that no other theory of tort liability is available to Gillespie here.

### B. Application of the First *Espinal* Exception to Heartland's Installation

The parties agree on facts that narrow the issue in dispute. They agree that Heartland was not a part of, directed, or consulted on the deinstallation, during which Gillespie was injured. Def. Mem. at 7; Opp'n at 5. They also appear to agree—as no party has alleged otherwise—that there were no relevant issues with the part of the exhibit at issue while it was on display between December 2017 and its deinstallation in December 2018.

The parties therefore agree that the issue presented on summary judgment is whether the evidence would permit a jury to find that Heartland, "while engaged affirmatively in discharging a contractual obligation [the installation the Exhibit], create[d] an unreasonable risk of harm to others, or increase[d] that risk," *Church ex rel. Smith*, 99 N.Y.2d at 111, with the others

7

including the persons, such as Gillespie, who disassembled the exhibit. If so, there is sufficient evidence to reach a jury on the elements of duty and causation. If not, there is not.

Gillespie's theory of liability is that Heartland created a dangerous condition by installing strongbacks to the permanent wall's drywall rather than mounting strongbacks to the permanent wall itself, which he contends made the walls of the exhibit vulnerable to detaching and falling on a worker during deinstallation. Opp'n at 5. Heartland does not dispute that it installed the strongbacks only into the drywall, and not into the permanent museum walls. It argues that there is insufficient evidence that (1) it had a duty to put strongbacks in the permanent walls; (2) putting strongbacks in the drywall created or enhanced a danger.

### 1. Strongback in the Permanent Wall

As to a duty to mount strongbacks into the Museum's permanent wall to assure safety, Heartland argues that there was no such duty, and in the alternative, that any such duty belonged to New Project.

#### a. Duty to Install Strongbacks

In support of its argument that it did not have a duty to install Strongbacks into the permanent wall, Heartland curiously relies on its own evidence on this point, notwithstanding that the dispositive issue on Heartland's summary judgment motion is whether *the non-movant*, Gillespie has adduced sufficient evidence of such a duty to reach the jury. *See, e.g.*, Opp'n at 5–7; Miller Decl., Ex. A ¶¶ 4, 6, Ex. C ¶¶ 7–8, & Ex. D ¶¶ 8–9. The Court nevertheless considers, at the outset, the evidence to which Heartland points, although this evidence does not speak squarely to whether there was a duty to use braces or strongbacks to attach the exhibit to the permanent wall.

In its brief in support of summary judgment, Heartland points to three items.

First, it cites the affidavit of its expert, Dave Peraza, a licensed engineer, who, although not involved in the underlying events, reviewed the record. Heartland cites Peraza as opining that "neither braces nor strongbacks attaching the exhibit walls to the permanent museum walls, floor or ceiling, were called for in the plans provided by [the Museum] for the exhibit nor were they required for same to be stable." Def. Mem. at 6; Reply at 4. Unhelpfully, Heartland does not cite to any specific part of Peraza's declaration. The first, descriptive part of Heartland's statement—recounting what the Museum-approved plans for exhibition called for—is supported by the observation in Peraza's declaration that "[n]one of the drawings" guiding the installation of the exhibit "have the partition walls attached to the permanent walls, ceiling or floor of the museum. There were no braces or strongbacks called for in the drawings." Dkt. 68-25 ("Peraza Aff.") ¶ 4. However, the vitally important second part of Heartland's synopsis of Peraza's declaration—the normative statement that braces and strongbacks were not required to be attached to the permanent wall to make the exhibit stable—does not appear there.

In asserting the lack of any duty to attach the wall using braces or strongbacks, Heartland also cites to "Exhibit L," Dkt. 68-22, a 45-page document containing blueprints of the exhibit. Again, however, Heartland does so without pointing to any specific part of the blueprint. *See* Def. Mem. at 5–6; Reply at 4. The Court is therefore left unaware of any part of the blueprint that might bear on whether, as an engineering matter, braces or strongbacks were required to adequately fortify the wall including during the de-installation process.

Finally, and curiously, Heartland points to the entirety of "Exhibit M," a 48-minute surveillance video that captures the accident—in which the wall collapses on Gillespie—and its aftermath. But Heartland does not explain how the video assists its summary judgment motion. *See Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) ("where there are no[] citations or

9

where the cited materials do not support the factual assertions in the Statements, the Court is free to disregard the assertion" (quotations omitted)).

As Gillespie notes, the one fact that Heartland's evidence (the Peraza affidavit and the underlying blueprints) can be taken to establish—that the plans governing the installation of the exhibit did not require such supports—is merely descriptive. It does not resolve the question of whether there was nonetheless a duty to use such. Indeed, as Gillespie notes, Heartland's F.R.C.P. 30(b)(6) witness, Jonas Pultinevicius, a Heartland project manager, when deposed, appeared to acknowledge that strongbacks, even if intended, would not necessarily even appear in the drawings for a project. Opp'n at 6. Asked whether strongbacks are "a normal part of the drawings or is that something done in the field," and specifically whether a project's drawings would "show strongbacks" had they been viewed is necessary, Pultinevicius responded: "No because they are not part of the exhibit." Ritzert Decl., Ex. D ("Pultinevicius Depo.") at 138–39; Opp'n at 6. Thus, Gillespie explains, the fact on which Heartland seizes—that the drawings or blueprints of the exhibit did not include strongbacks—does not resolve, and may not even speak to, whether these were necessary to enable the safe installation, maintenance, or—as relevant here—disassembly of the exhibit. *See* Opp'n at 6.

Heartland's evidence, on its own terms, focused on the specifications in the project's blueprints, thus does not establish the lack of a legal duty here to take additional measures to secure the exhibit in the interests of safety. *See Nipon v. Yale Club of New York City*, No. 13 Civ. 1414 (HBP), 2014 WL 6466991, at *7 (S.D.N.Y. Nov. 18, 2014) ("Even if the step did comply with the New York City Building Code . . . that fact would not be dispositive of the issue of negligence. Compliance with a building code does not establish due care; compliance is only some evidence of due care."); *Lamuraglia v. New York City Transit Auth.*, 749 N.Y.S.2d 82, 82

10

(2002) ("Although Premium complied with applicable regulations . . . this bare minimum compliance is only some evidence of due care."); *see also Rosado v. State*, 527 N.Y.S.2d 314 (1988) ("[b]lueprints . . . do not by themselves establish a safety standard").

In its reply brief, notwithstanding Gillespie's effective counter, Heartland reprises the same theory—that the museum exhibit's written design is the measure of whether there was a legal duty to use strongbacks. It argues that "strongbacks were unnecessary once the exhibit was fully installed." Reply at 4. In so arguing, Heartland's reply cites, in their entireties, the affidavits of Jonas Pultinevicius, Ritzert Decl., Ex. E ("Pultinevicius Aff."), and Adam Ehly, Ritzert Decl., Ex. F ("Ehly Aff."). They are operations and project managers for Heartland, respectively. *See* Pultinevicius Aff. ¶ 1; Ehly Aff. ¶ 1. The focus of these affidavits is, again, on the details of the blueprints for the exhibit's installation, although the exhibits also note the absence of problems with respect to the exhibit while on display. *See, e.g.*, Pultinevicius Aff. ¶ 25; Ehly Aff. ¶ 15. But again, the fact that a project blueprint, even if comprehensive as to the details of installation, did not include certain particulars does not mean that further measures were not required to reasonably assure safety. Heartland's showing thus is unresponsive to its burden on this motion: to "demonstrat[e] that there is no genuine issue of material fact for trial" as to whether strongbacks were necessary for a safe deinstallation of the exhibit. *See Citizens Bank of Clearwater v. Hunt*, 927 F.2d 707, 710 (2d Cir. 1991).

In any event, the operative question on Heartland's motion is whether *Gillespie*, the non-movant, has adduced evidence of a duty to install braces or strongbacks sufficient to reach a jury. *See* Fed. R. Civ. P. 56(a); *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008). Gillespie has done so. His construction expert, Richard Robbins, a licensed architect in New York State with 30 years of construction and design experience, testified that "had the braces

11

(strongbacks) been properly installed by Heartland . . . the subject temporary walls would not have fallen onto Mr. Gillespie." Miller Decl., Ex. D ("Robbins Aff.") ¶ 9. And workers who were present at the deinstallation provided testimony corroborating Robbins' opinion that the strongbacks were necessary to prevent the wall's collapse. Wilson Diodonet, a member of the de-installation crew who was on scene and observed the wall fall, attested, based on his personal observations, that the lack of a secure anchor caused the collapse, such that, "[h]ad Heartland Studios properly secured and anchored the temporary wall . . . the temporary wall would not have fallen." Miller Decl., Ex. C ("Diodonet Aff.") ¶¶ 7–8; *see also* Joint 56.1 ¶ 23. Similarly, Carlos Ruiz, who worked on de-installation for New Project and was present at the time of the incident, testified that if the strongback had "been properly fastened to a stud [in the permanent wall], it would have never pulled out . . . [and] would have been secured." Ritzert Decl., Ex. H ("Ruiz Depo.") at 150–52.

To be sure, a jury would be at liberty to discredit or discount this testimony, and to find that the methods used to mount the exhibit accorded with the duty of reasonable care. But the evidence Gillespie has mustered is sufficient to raise a question of fact. Whether strongbacks were required to be installed to meet the duty of reasonable care cannot, therefore, be resolved in Heartland's favor on summary judgment. This issue must be resolved by the trier of fact. *See, e.g.*, *Hyowon Kim v. Cruz*, No. 08 Civ. 8905 (RMB) (GWG), 2009 WL 5103157, at *2 (S.D.N.Y. Dec. 17, 2009) (denying defendants' motion for summary judgment "because the record reflects several factual issues that should be reserved for the jury, including, among other things: (1) whether [d]efendants failed to use reasonable care"); *Mele v. Metro. Transp. Auth.*, No. 04 Civ. 03661 (LTS) (THK), 2006 WL 2255080, at *4 (S.D.N.Y. Aug. 4, 2006) (denying summary judgment where the "jury, as the finder of fact, could reasonably determine that the

[defendant] breached its duty. . . by failing to take reasonable care, . . . [and thus plaintiff] present[s] genuine issues of material fact"); *McDonough v. Celebrity Cruises, Inc.*, 64 F. Supp. 2d 259, 265 (S.D.N.Y. 1999) (denying summary judgment where, "[w]hatever the ultimate merits of [plaintiff's] negligence claim may be, summary judgment would not be an appropriate disposition of that claim. The question of whether Defendants exercised reasonable care under the circumstances cannot be answered at this juncture[.]").

### b. If Strongbacks were Necessary, Whose Duty

Heartland next argues that even if strongbacks mounted to the permanent wall had been necessary to secure the exhibit, installing such was the responsibility of New Project, not Heartland. *See* Def. Mem at 6. Here again, Heartland does not cite evidence so establishing—and, more important, non-movant Gillespie has pointed to testimony supporting the contrary.

Heartland first cites the affidavits of the two Heartland project managers, Pultinevicius and Ritzert. *See id.* (citing "Exhibits 'E' and 'F'"). Heartland again does so in the aggregate, unhelpfully declining to point to any specific portion ostensibly supportive of the theory that the duty to install strongbacks, if any, fell on the entity responsible for taking the exhibit down. On its review, the Court notes that the project managers state, descriptively, that "during the installation process . . . the crew would use . . . strong-backs or toggle bolts to hold [the walls] in place until the adjacent sections were locked in place," Ehly Aff. ¶ 14; Pultinevicius Aff. ¶ 16, and opine that a similar protection should have used by New Project, to wit, that the "de-installation of Our Senses should have been done in the reverse order of its installation, with use of jacks, braces and lifts." Pultinevicius Aff. ¶ 27; *see* Ehly Aff. ¶ 14. The Court assumes *arguendo* that the project managers' lay opinion testimony would be admissible on this point. But that the two project managers are prepared to so opine does not preclude that competent

13

contrary testimony could not be received at trial. Thus, although such testimony might create a genuine of issue of material fact were Gillespie moving for summary judgment on this point, it does not meet Heartland's burden, on its motion, of identifying "the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323.

      Heartland next asserts that Peraza's affidavit supports that "there was nothing about the way that the exhibit was constructed that caused the plaintiff's incident," and that the fault lay in New Project's "improper dismantling sequence." Def. Mem. at 5; Reply at 4. Heartland again does not point to a specific part of Peraza's affidavit that so states. The Court notes that the affidavit concludes that "based on a reasonable degree of engineering certainty, the plaintiff's alleged incident was caused by the disassembling the exhibit in an improper sequence and not by any errors or improprieties in the design or installation of the exhibit." Peraza Aff. ¶¶ 7, 8. While this portion of Peraza's declaration is presumably the aspect to which Heartland refers, Peraza's opinion to that effect is conclusory. It lacks any explanation. It is thus unclear whether, if challenged under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), this testimony would satisfy Federal Rule of Evidence 702. Regardless, even assuming *arguendo* that Peraza's testimony to this effect would be received at trial, it is merely an opinion on one side of the question. Like the testimony of the operations and project managers, it could assist Heartland in defeating a summary judgment motion by Gillespie had one been made, but it is not conclusive on the question of whether the duty to better secure the exhibit for the process of its de-installation fell on the installer (Heartland), the de-installer (New Project), or both.

      Finally, Heartland again curiously cites to the 48-minute surveillance video showing the collapse of the wall to which the exhibit was attached. Heartland does not explain what about this exhibit bears on which entity—Heartland or New Project or both—bore the duty to better

fortify the exhibit. *See* Def. Mem. at 5; Reply at 4. The Court accordingly disregards the video in considering this point. *See Holtz*, 258 F.3d at 73 ("where there are no[] citations . . . the Court is free to disregard the assertion").

Critically on Heartland's motion, Gillespie has mustered evidence situating the duty to fortify the exhibit on its installer. *See* Opp'n at 2. His expert, Robbins, pointedly testified that he disagreed with Peraza's opinion that "the alleged accident was caused by the disassembling [of] the exhibit in an improper sequence and not by any errors or improprieties in the design or installation of the exhibit." Robbins Aff. ¶ 10 (quoting Peraza Aff. ¶ 8). Rather, Robbins opined that "[t]he sequence of disassembly had nothing to do with the temporary wall falling on Mr. Gillespie because, had the brace (strongback) been properly installed by Heartland, it would have provided stable support for the temporary wall." *Id.* And Caleb Stephens, an employee of New Project, who was an eyewitness to the collapse of the temporary wall on Gillespie, testified that "if the temporary wall had been properly secured to the museum wall, the temporary wall would not have fallen." Miller Decl., Ex. A. ("Stephens Aff.") ¶ 5; *see also* Miller Decl. Ex. B ("Stephens Depo.") at 77. Stephens clarified that he understood Heartland to have been "responsible for properly securing the temporary wall to the permanent wall of the museum." Stephens Aff. ¶ 6.

This evidence is sufficient for Gillespie's case to reach the jury on the twinned issues of duty and causation as it relates to Heartland's failure to secure the exhibit to the permanent wall via strongbacks. Although a reasonable jury would not be obliged to credit Gillespie's evidence, it could do so, and find both that Heartland had a duty to install strongbacks into the permanent wall and that its failure to do so proximately led to the wall's collapse, at the time of de-installation. The Court therefore denies Heartland's motion for summary judgment on this point.

## 2. Affirmatively Dangerous Condition: Strongbacks in Drywall

Heartland also moves against a related theory of liability which Gillespie pursues, also based on the first *Espinal* exception. In addition to arguing that Heartland breached its duty of reasonable care for failing to mount strongbacks onto the permanent wall during the exhibit's installation, Gillespie argues that Heartland created an affirmatively dangerous condition by installing strongbacks to the drywall, because such were unstable. Heartland does not deny that it installed strongbacks into the drywall. *See* Def. Mem. at 6; Pultinevicius Depo. at 127. It instead pursues summary judgment as to the theory that doing so breached a duty of reasonable care and created a dangerous condition for the de-installation crew.

For much the same reasons as above, the Court denies this motion. The decisive issue on Heartland's motion is again whether non-movant Gillespie has marshalled sufficient evidence on this point to reach a jury. Gillespie has done so. His construction expert, Robbins, attested that installing strongbacks in the drywall created a dangerous condition, in that the deinstallation crew

> could not have known at the time of the deinstallation operation that the braces (strongbacks) were not securely fastened to a structural element. The braces (strongbacks were improperly secured to the permanent wall's gypsum board (drywall), which is, critically, a non-structural element. This dangerous condition, which was not visible to the workmen at the time, gave them a false sense of security in the execut[ion] of their task.

Robbins Aff. ¶ 8. Along the same lines, New Project worker Carlos Ruiz testified that the appearance of the structure suggested that the strongback was "properly fastened" to the permanent wall, and that the deinstallation crew was only "were able to tell it was not properly anchored" when "the wall fell." Ruiz Depo at 158. Caleb Stephens likewise attested that after the wall fell on Gillespie, Stephens, "checked to see what had caused the temporary wall to fall and noticed that the bracket and screws supporting the

temporary wall were placed into drywall which is completely improper and dangerous as it does not provide proper support." Stephens Aff. ¶ 4.

This evidence is sufficient to reach the jury on this variant of Gillespie's theory of liability. The jury may or may not credit this theory of duty and causation. And although the issue on Heartland's motion for summary judgment is the sufficiency of Gillespie's proof, not of Heartland's, the Court is constrained to note the anemic nature of Heartland's affirmative evidence on this point, at least as previewed in its motion for summary judgment. Heartland states that securing a strongback into drywall would not create a dangerous condition, but its statement to this effect is conclusory. *See* Def. Mem. at 5 ("nothing about the way that the exhibit was constructed that caused the plaintiff's incident"). And the only evidence Heartland cites on this point is "Exhibit L," the 45-page document containing blueprints of the exhibit, but Heartland does not point to anything specific within that document, let alone explain why the blueprints are relevant to, let alone dispositive of, its claim that in attaching the strongback to the drywall it failed to act with reasonable care.

Heartland has failed to carry its burden of proving the absence of a question of material fact. *See Holcomb v. Iona Coll.*, 521 F.3d 130, 132 (2d Cir. 2008). The Court accordingly denies Heartland's motion for summary judgment.

## CONCLUSION

For the foregoing reasons, the Court denies Heartland's motion for summary judgment. The Clerk of Court is respectfully directed to terminate the motion pending at docket 67.

This case will now proceed to trial. The parties are directed to submit a joint pretrial order consistent with the Court's individual rules, along with all other filings required by those rules, by September 13, 2021. Upon review of the joint pretrial order, the Court will schedule a

conference to, *inter alia*, resolve any motions *in limine* that have been made and discuss the setting of a prompt trial date.

SO ORDERED.

PAUL A. ENGELMAYER
United States District Judge

Dated: August 25, 2021
New York, New York